**GI of Pago Pago and TEO of Pago Pago, Plaintiffs**

**v.**

**TAETAFEA, JOHN POTI and FAALANU of Pago Pago, Defendants**

No. 88-1948

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Land: "Pueofua'au in Pago Pago]

October 18, 1948

ARTHUR A. MORROW, *Chief Justice;* and NUA, *District Judge.*

DECISION

Heard at Fagatogo October 12, 1948.

Olotoa, for Gi; Viavia, for Teo; Suafoa, for Taetafea et al.

MORROW, *Chief Justice.*

Taetafea, John Poti and Faalanu offered certain land designated as Pueofua'au in Pago Pago for registration as their individually owned land. The offer to register was accompanied by a survey of the tract. Teo and Gi each filed

an objection in behalf of his family claiming that the land belonged to him as the matai of his family. Hence this litigation. Sec. 905 of the American Samoan Code. On the day preceding the hearing the court viewed the land in the presence of all parties concerned. The L. M. S. Church of Pago Pago is located on the tract. The evidence clearly showed that the owners of the property had dedicated the part of the land now used for church purposes to the L. M. S. Congregation of Pago Pago for a church; also a highway running from the Pago Pago-Fagasa road to the front of the church for such purposes.

Teo claims to be the owner of all the land, his title long antedating the establishment of the government in 1900. Gi claims to own substantially the southern half of the surveyed tract under a claim of title likewise antedating the establishment of the government. Taetafea, John Poti and Faalanu claim that their title originated in 1905 through the gift of the land by the then Gi with the consent of Gi family to Taetafea and her husband Poti. Taetafea is a member of the Gi family. Upon her marriage to Poti he came to live with her in the Gi family and they rendered service to the then Gi. Poti was a member of the Fita Fita Guard and had a cash income. His service to the Gi included cash donations. Poti died sometime before World War I. His widow Taetafea, and their two children, the above John Poti and Faalanu, survived him.

It was admitted by all parties that what is substantially the southeastern half of the land involved in this case was used by the Gi family for a long time prior to 1905. The present Teo testified that a former Teo gave this land to a former Gi, presumably years before the establishment of the government. It does not appear that the present Teo (although he testified to the fact of such gift) had any personal knowledge thereof. He admitted that his information was based upon hearsay. While no objection was made

to the introduction of his hearsay testimony and no motion made to strike it out, we feel compelled to say that, regardless of the integrity of Teo, it is entitled to very little if any weight. It is not necessary for us to consider it because the evidence clearly shows that Taetafea and her husband Poti, and after Poti's death, Taetafea and her children possessed this southeastern half for more than 20 years. Their possession was actual, open, exclusive, continuous and under a claim of title for more than the statutory period. Under these circumstances any claim that the Teo may have had has long since been outlawed through the operation of the Statute of Limitations. *Maxwell Land Grant Co. v. Dawson*, 151 U.S. 586, 607; *Vaimaona v. Mulitauaopele S.*, No. 57-1948 (Am. Samoa); *Puailoa v. Leapaga*, No. 64-1948 (Am. Samoa); 2 Corpus Juris 251.

■ Gi, while admitting that Taetafea and her husband Poti, and after Poti's death Taetafea and her two children, had plantations on the land for many years after 1905, claims that their possession and use of the land was under authority of the Gi, he having assigned such land to them (they are Gi family members) in accordance with Samoan customs. We know judicially that some matais in American Samoa have, with the consent of their family members, given family lands outright to certain members of their families. Taetafea testified that she was present and heard the old Gi in 1905 make a gift of this land to her and her husband and that such gift was a reward for the splendid service rendered by her husband and herself to the then Gi; also that such gift was followed by possession by the donees. This testimony was not contradicted. Alo's testimony, while not entitled to the same weight as Taetafea's on account of his youth at the time, corroborated Taetafea's testimony in regard to the gift. The present Gi did not deny such gift. He obviously did not know whether such gift was in fact made. All he claimed was that he had not heard

about it. In view of the uncontradicted testimony of Taetafea and Alo, the Judges believe that the evidence preponderates in favor of the view that such gift was in fact made.

The erection of the L. M. S. Church now located on the land and shown on the survey was begun in 1935. It appears beyond doubt that Teo, acting in behalf of his family, expressly dedicated a portion of the land on which the church stands for the use of the church. Gi claims that he, acting in behalf of his family, also dedicated the other portion of the land on which the church stands for church purposes. Gi insists that since Taetafea did not object to the erection of the church it is quite apparent that she and her children were not the owners of any part of the land on which the church stands. We do not think this follows. It must be remembered that Taetafea is a woman. Any objection by her would not have stopped the erection of the church. If she had objected, the probability is that she would have found herself in difficulty. We think an objection by her would have been a useless act and under these circumstances her failure to object cannot be taken as an implied admission of lack of ownership by her and her children of any part of the land on which the church is built.

It is our conclusion from the evidence that the Teo family is the owner of substantially the northwest half of the surveyed land while Taetafea and John Poti and Faalanu are the owners of the remainder. We reach this conclusion after reviewing the evidence with care. Legal descriptions of these two parts will be set out in the decree.

The line dividing this tract between the respective owners runs in a northeasterly direction, parallel to the Fagasa road and cuts the church lengthwise. The rights of the owners of this land are subject to the rights of the L. M. S. Congregation of Pago Pago in that portion of the land dedicated for church purposes. "By analogy, rather than in

strict conformity to the common law principle, the theory of dedication has been invoked to uphold gifts for pious and charitable uses, as for churches, schools, and cemeteries, though their benefits are enjoyed by a certain class, and not by the public at large, some of the specific applications of this analogy being found in cases sustaining dedications for the residence of a minister or a particular religious congregation, for a church or for a religious purpose, for a camp ground for holding religious meetings, for a cemetery, and for a public school." 16 Am.Jur. 351. Land "may be dedicated for the use of a particular religious sect or denomination, or a particular church society, as a place for worship, as a cemetery, or as a parsonage." 4 Tiffany on Real Property (3rd Ed.) p. 332. We upheld a dedication of land for purposes of a Mormon parsonage in *Leiato v. Satele and Tapopo*, No. 68-1948 (Am. Samoa). That land may be dedicated by the owner for church purposes we have no doubt.

■ As heretofore stated the evidence shows that the Teo expressly dedicated a portion of his land for a church. Taetafea, John Poti and Faalanu made no objection to the erection of the church, part of which is on their land. They have stood by for at least 13 years and voiced no objection. "Dedication may arise from the failure of the owner to object to use by the public. A highway may be established in this manner. In such a case there is said to be an inference or presumption that such use and enjoyment had a legal origin, and that the highway was at some anterior period laid out and established by competent authority." 16 Am.Jur. p. 392. While mere use by the public does not establish dedication, nevertheless the owner's acquiescence in such usage over a long period of time is a fact having a bearing on the question of dedication. "The theory is that if the public user has been openly as of right, and for so long a time that it must have come to the knowledge of the

405

owner of the land, the owner's acquiescence therein may justify the inference that he intended that it be devoted to such use." 4 Tiffany on Real Property (3rd Ed.) p. 340. The fact that Taetafea, Poti and Faalanu have stood by for 13 years and seen a portion of their land used for church purposes and made no objection thereto is a clear indication to us of a dedication by them.

Of course the church has only an easement in the portion of the land used for church purposes, the fee simple being in the dedicators. "By a common law dedication, the fee does not pass. The public acquires only an easement or such an interest in the land as is necessary for its enjoyment of the use. The fee ordinarily remains in the proprietor, the public holding the easement in trust. The legal or equitable title to land is not destroyed by dedication." 16 Am.Jur. p. 402. To the same effect is 4 Tiffany (3rd Ed.) p. 366. We have held that the fee to dedicated land remains in the proprietor and that the public acquires only an easement therein. *Leiato v. Satele and Tapopo*, No. 68-1948 (Am. Samoa).

It is ORDERED, ADJUDGED AND DECREED that the land as shown on the survey beginning at Y=50,-942.43, X=191,898.00 thence N 43°34′ E, 209.15 ft.; thence S 33°6′ E, 165.55 ft.; thence S 55°10′ W, 363.7 ft.; thence N 17°55′ E, 203.04 ft. to the place of beginning, shall be registered as the land of the Teo in his capacity as matai of the Teo family.

And it is further ORDERED, ADJUDGED AND DECREED that such land is subject to the right of the L. M. S. Congregation of Pago Pago to continue to use the portion thereof now used for church purposes (the church and highway leading to it are shown on the survey heretofore referred to) for such purposes.

And it is further ORDERED, ADJUDGED AND DECREED that the land beginning at the most southwesterly

corner as shown on the survey (which corner is the southern end of the boundary bearing N 17°55′ E referred to in the foregoing part of this decree) thence N 55°10′ E, 363.7 ft.; thence S 33°6′ E, 127.75 ft.; thence S 55°10′ W, 248.48 ft.; thence S 49°25′ W, 57.22 ft.; thence N 55°57′ W, 143.45 ft. to the point of beginning, is the individually owned land of Taetafea, John Poti and Faalanu.

And it is further ORDERED, ADJUDGED AND DE-CREED that such last mentioned land is subject to the right of the L. M. S. Congregation of Pago Pago to continue to use the portion thereof now used for church purposes (including the highway running from the Pago Pago-Fagasa road across the land to the front of the church) for such purposes. Such land is also subject to the rights of the public in the Pago Pago-Fagasa highway which crosses it in a southwesterly direction as shown on the survey.

The Registrar of Titles will be advised to register the land offered for registration in accordance with the provisions of this decree.

Since the benefit of the survey will inure in part to Teo, costs in the amount of $8.33 are hereby assessed against him. A like sum is assessed against Gi and a further like sum against Tautafea, John Poti and Faalanu. All costs are to be paid within 30 days.